

EXHIBIT

A



*000000*
Liberty Mutual
PO Box 970
Mishawaka IN 46546

Lisa A Davis
1225 Brookway Rd
Columbus OH 43227-1189



## CONTACT US

Questions About
Your Policy
**By Phone**
1-800-225-8285

**Visit Us Online**
LibertyMutual.com

**To Report a Claim**
**By Phone**
1-800-2CLAIMS
(1-800-225-2467)
**Online**
LibertyMutual.com/claims

**Sign Up for eService**
- Pay your bill
- Go paperless
- View your policy
- File or view a claim
Manage your policy 24/7 at
LibertyMutual.com/register

# Welcome
## Thank you for choosing Liberty Mutual.

Through your affiliation with **EverQuote**, you are receiving savings on your auto insurance.

This package contains your new auto insurance policy, along with identification cards to place in your car. You'll also find helpful information about your Liberty Mutual benefits and services. Please look over this information and keep it with your important documents.

**Liberty Mutual Customer Advantage™** - With Liberty Mutual, customers earn benefits over time, just for being our customer. See enclosed insert for full program details, or if enrolled in paperless policy documents, review the details in your eService account.

Be sure to download our mobile app or visit **LibertyMutual.com/register** and check out our eService options. eService makes it easy to get information and manage your Liberty Mutual account online whenever you like.

If you have any questions about your coverage, available discounts or product offerings, please call us at **1-800-225-8285**.

Sincerely,
Your Liberty Mutual Service Team

4GO58024AOS28B8267465TO0000000

CONTINUE TO THE NEXT PAGE
FOR A GUIDE TO YOUR
NEW AUTO PACKET

Important Billing Information Enclosed





## A GUIDE TO YOUR NEW AUTO PACKET

| PAGE | SECTION |
|---|---|
| 1 | **Policy Declarations** <br> Includes important information about your policy, including vehicles and drivers covered as well as your discounts and benefits. |
| 2 | **Coverage Information** <br> Includes important coverage information. Please review this section in detail to ensure you are fully covered. Contact us with any questions. |
| 5-45 | **Important Notices & Policy Forms** <br> This section includes any notices and policy forms that may change your coverages. |
| INCL | **Identification Cards** <br> This section includes your insurance cards, which you are legally required to keep in your vehicle at all times. |



**Named Insured:**
1. Lisa A Davis

**Policy Number:**
AOS-288-267465-70 9 6

**Policy Period:**
01/12/2019 to 01/12/2020

**Mailing Address:**
1225 Brookway Rd
Columbus OH 43227-1189

**Affinity:**
EverQuote

## Important Billing Information Enclosed

| ❓ Questions about your Policy?<br>Call 1-800-225-8285 | Policy Number:<br>AOS-288-267465-70 9  6 | Report a Claim:<br>1-800-2CLAIMS or<br>LibertyMutual.com/claims |  |
|---|---|---|---|

 **ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

# Policy Declarations
## Total Annual Premium:* $1,493.00

💲 Save an estimated $24 annually by switching to Paid-in-Full

**Bill Frequency:** Monthly     **Installment Fee Per Payment:** $2.00
*Total Annual policy premium above does not include installment fees.

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

## Insurance Information

| Named Insured: | Lisa A Davis | Policy Number: | AOS-288-267465-70 9  6 |
|---|---|---|---|
| Mailing Address: | 1225 Brookway Rd<br>Columbus OH 43227-1189 | Policy Period: | 01/12/2019-01/12/2020 12:01 a.m.<br>standard time at the address of the<br>Named Insured |
| | | Declarations Effective: | 01/12/2019 |
| | | Affinity Affiliation: | EverQuote |

### Vehicles Covered by Your Auto Policy

| | YEAR | MAKE | MODEL | VEHICLE ID NUMBER | ANNUAL MILEAGE | PURCHASE DATE |
|---|---|---|---|---|---|---|
| 1 | 1998 | TOYOTA | COROLLA | 2T1BR18E6WC000023 | 2,500 | 2018 |
| 2 | 2005 | NISSAN | ALTIMA | 1N4AL11D95C347325 | 2,500 | 2014 |
| 3 | 1999 | SUZUKI | GRAND VITA | JS3TD62V7X4114689 | | 2018 |

### Driver Information

| | NAME | STATE | NAME | STATE |
|---|---|---|---|---|
| 1 | Lisa A Davis | OH | | |

To ensure proper coverage, please contact us to add drivers not listed above.

### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your Total Annual  Policy Premium.

#### Vehicle Discounts

| | VEH 1<br>1998<br>TOYOTA<br>COROLLA | VEH 2<br>2005<br>NISSAN<br>ALTIMA | VEH 3<br>1999<br>SUZUKI<br>GRAND V |
|---|---|---|---|
| Anti-Theft Device Discount | | • | |
| Vehicle Safety Discount | • | • | • |



**Want to Add a Coverage?**
Call 1-800-225-8285 to talk to your agent about the availability of this coverage and whether it meets your needs.

**Policy Number:**
AOS-288-267465-70 9  6

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/claims

**DISCOUNTS AND BENEFITS SECTION** continued

**Policy Discounts**

- Early Shopper Discount
- Accident Free Discount
- Preferred Payment Discount
- Paperless Policy Discount
- Violation Free Discount
- Multi-Car Discount
- Multi-Policy Property Discount

**Policy Benefits**

**Accident Forgiveness:**
This policy is not eligible for Accident Forgiveness

**New Car Replacement:**
New Car Replacement is not included with this policy

**Liberty Mutual Customer Advantage™.** Liberty Mutual customers earn free benefits over time with Customer Advantage.

# Coverage Information

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. **Where no premium is shown, you have not purchased the indicated coverage for that vehicle.**

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | | |
|---|---|---|---|---|---|
| | | | VEH 1 1998 TOYOTA COROLLA | VEH 2 2005 NISSAN ALTIMA | VEH 3 1999 SUZUKI GRAND V |
| **A. Liability** | | | | | |
| Bodily Injury | $ | 25,000 Each Person | $222 | $225 | |
| | $ | 50,000 Each Accident | | | |
| Property Damage | $ | 25,000 Each Accident | $213 | $255 | |
| **C. Uninsured/Underinsured Motorists** | | | | | |
| Uninsured Motorists | $ | 25,000 Each Person | $19 | $24 | |
| Bodily Injury | $ | 50,000 Each Accident | | | |
| **D. Coverage for Damage to Your Auto** | | | | | |
| Collision Actual Cash Value Less Deductible Shown Veh 2 $500 | | | Not Purchased* | $263 | Not Purchased* |
| Other Than Collision Actual Cash Value Less Deductible Shown Veh 2 $500 | Veh 3 $500 | | Not Purchased* | $112 | $128 |





| **Want to Add a Coverage?** | **Policy Number:** | **Report a Claim:** |
|---|---|---|
| Call 1-800-225-8285 to talk to your agent about the availability of this coverage and whether it meets your needs. | AOS-288-267465-70 9  6 | 1-800-2CLAIMS or LibertyMutual.com/claims |

## Coverage Information continued

| COVERAGE | LIMITS | PREMIUM PER VEHICLE | | |
|---|---|---|---|---|
| | | VEH 1 1998 TOYOTA COROLLA | VEH 2 2005 NISSAN ALTIMA | VEH 3 1999 SUZUKI GRAND V |
| **Optional Coverages** | | | | |
| Towing And Labor Cost Each Disablement Veh 1 $50     Veh 2 $50 | | $16 | $16 | |
| **Annual Premium Per Vehicle:** | | $470 | $895 | $128 |

**Total Annual Policy Premium: $1,493.00**

### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- **Deductible Fund™**: The last thing you want to think about after an accident is your deductible. We'll lower your collision deductible on every car on your policy by $100 each year you keep the fund.
- **Better Car Replacement™**: Totaling your car hurts. We'll make it feel a little better. If your car is totaled, we'll give you the money for a car that's one model year newer with 15,000 fewer miles on it.
- **Rental Car Reimbursement**: An accident shouldn't slow you down. We'll pay your rental costs for as long as it takes to fix your car when you repair it at one of our Guaranteed Repair Network shops.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or  a deductible may apply. For a complete explanation, please consult your agent today.

**Policy Forms and Endorsements:** The following forms and endorsements are applicable to your policy.

| | |
|---|---|
| Amendment of Policy Provisions - Ohio AS3716 07 16 | Automobile Amendatory Endorsement  AS3763 07 16 |
| Uninsured Motorists Coverage - Ohio  AS3645 07 16 | Amendment of Policy Definitions AS2344 04 08 |
| Coverage For Damage To Your Auto Exclusion Endorsement PP 13 01 12 99 | Towing and Labor Coverage AS2208 03 16 |
| Nuclear, Bio-Chemical & Mold Exclusion Endorsement AS2213 02 05 | Liability Coverage Exclusion Endorsement PP 03 26 04 13 |



| Questions about your Policy?<br>Call 1-800-225-8285 | Policy Number:<br>AOS-288-267465-70 9  6 | Report a Claim:<br>1-800-2CLAIMS or<br>LibertyMutual.com/claims |
|---|---|---|

LibertyGuard Auto Policy Declarations provided and underwritten by LM General Insurance Company (a stock insurance company), Boston, MA.

_____
President

_____
Secretary

This policy, including endorsements listed above, is countersigned by:

_____
Authorized Representative

**Important Billing Information Enclosed**



01/09/2019

## Important Notice About Your Electronic Payment

Dear LISA A DAVIS,

You have elected the Electronic Funds Transfer billing method to pay your policy premium.

The payment will be billed to your financial institution on 02/12/2019 for withdrawal from your account within three business days, as noted below.

In the future, payments will be withdrawn within three business days of the 12th of each installment period, until the insurance premium is satisfied. We will notify you of any change in the payment amount on or before the billing date.

Unsuccessful payments may be subject to a $25.00 fee.

**If your payment account changes,** e.g., you open a new account, move to a new financial institution, or change your account number, you must notify a service representative immediately to avoid the $25.00 fee for returned payments.

If you have any questions, please contact a service representative at **1-800-225-8285** .

| Policy Number | Policy Name | Payment Amount |
|---|---|---|
| AOS-288-267465-70 | LISA A DAVIS | $124.42 |

Installment Fee Amount:                               $2.00

**Billing Date:**                                     02/12/2019

**Total Withdrawal Amount:**               $126.42

---

INSURANCE
INFORMATION

Named Insured:
**Lisa A Davis**

Policy Number:
AOS-288-267465-70

**Policy Period:**
01/12/2019
01/12/2020

 ACTION
REQUIRED

- Make note of the payment amount for your withdrawal.

- If you need to change your payment account, notify us immediately.

 CONTACT US

Questions About
Your Policy

**By Phone**
1-800-225-8285

**Online**
LibertyMutual.com

GO PAPERLESS

Manage your policy 24/7
on eService
LibertyMutual.com/register



Auto Policy

# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

## To serve you best…

Liberty Mutual has over 350 service offices throughout the United States and Canada.  Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**

Liberty Mutual Insurance Group

AUTO 3615 Ed. 6-98

LIBERTYGUARD AUTO POLICY
QUICK REFERENCE
DECLARATIONS PAGE
Your Name and Address
Your Auto or Trailer
Policy Period
Coverages and Amounts of Insurance



|  | Beginning On Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |

**PART A - LIABILITY COVERAGE**

| | |
|---|---|
| Insuring Agreement | 2 |
| Supplementary Payments | 2 |
| Exclusions | 3 |
| Limit of Liability | 4 |
| Out of State Coverage | 4 |
| Financial Responsibility | 4 |
| Other Insurance | 4 |

**PART B - MEDICAL PAYMENTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 4 |
| Exclusions | 4 |
| Limit of Liability | 5 |
| Other Insurance | 5 |

**PART C - UNINSURED MOTORISTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 5 |
| Exclusions | 6 |
| Limit of Liability | 6 |
| Other Insurance | 6 |
| Arbitration | 7 |

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

| | |
|---|---|
| Insuring Agreement | 7 |
| Transportation Expenses | 8 |
| Exclusions | 8 |
| Limit of Liability | 9 |
| Payment of Loss | 10 |
| No Benefit to Bailee | 10 |
| Other Sources of Recovery | 10 |
| Appraisal | 10 |

| | |
|---|---|
| **PART E - DUTIES AFTER AN ACCIDENT OR LOSS** | 10 |

**PART F - GENERAL PROVISIONS**

| | |
|---|---|
| Bankruptcy | 11 |
| Changes | 11 |
| Fraud | 11 |
| Legal Action Against Us | 11 |
| Our Right To Recover Payment | 11 |
| Policy Period And Territory | 11 |
| Termination | 11 |
| Transfer Of Your Interest In This Policy | 12 |
| Two Or More Auto Policies | 12 |

| | |
|---|---|
| **\*MUTUAL POLICY CONDITIONS** | 13 |

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.


Liberty
Mutual
INSURANCE

| AUTO POLICY |
|---|

**AGREEMENT**

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

**DEFINITIONS**

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

1. The end of 90 days following the spouse's change of residency;

2. The effective date of another policy listing the spouse as a named insured; or

3. The end of the policy period.

B. "We", "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in

1. or 2. above.

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. A "newly acquired auto".

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

This Provision (**J.4.**) does not apply to Coverage For Damage To Your Auto.

K. "Newly acquired auto":

1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

a. A private passenger auto; or

b. A pickup or van, for which no other insurance policy provides coverage, that:

(1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2) Is not used for the delivery or transportation of goods and materials unless such use is:

(a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

(b) For farming or ranching.

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.



However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

  b. Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

   (1) 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

   (2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

  c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

   (1) 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

   (2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

  1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

  2. Any person using "your covered auto".

  3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

  4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (**B.4.**) applies only if the person or organization does not own or hire the auto or "trailer".

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

  1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

  2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

  3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgement which does not exceed our limit of liability for this coverage.

  4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.



5. Other reasonable expenses incurred at our request.

**EXCLUSIONS**

**A.** We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:
   a. Rented to;
   b. Used by; or
   c. In the care of;
   that "insured".
   This Exclusion (**A.3.**) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (**A.4.**) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (**A.5.**) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:
   a. Selling;
   b. Repairing;
   c. Servicing;
   d. Storing; or
   e. Parking;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (**A.6.**) does not apply to the ownership, maintenance or use of "your covered auto" by:
   a. You;
   b. Any "family member"; or
   c. Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion **A.6.**
   This Exclusion (**A.7.**) does not apply to the maintenance or use of a:
   a. Private passenger auto;

b. Pickup or van; or
c. "Trailer" used with a vehicle described in **a.** or **b.** above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (**A.8.**) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":
   a. Is an insured under a nuclear energy liability policy; or
   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:
   a. Nuclear Energy Liability Insurance Association;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:
   a. Has fewer than four wheels; or
   b. Is designed mainly for use off public roads.
   This Exclusion (**B.1.**) does not apply:
   a. While such vehicle is being used by an "insured" in a medical emergency;
   b. To any "trailer"; or
   c. To any non-owned golf cart.

2. Any vehicle, other than "your covered auto", which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:
   a. Owned by any "family member"; or
   b. Furnished or available for the regular use of any "family member".
   However, this Exclusion (**B.3.**) does not apply to you while you are maintaining or "occupying" any vehicle which is:
   a. Owned by a "family member"; or
   b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:
   a. Competing in; or



**b.** Practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **B** or Part **C** of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":
1. Caused by accident; and
2. Sustained by an "insured".
We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:
1. You or any "family member":
   a. While "occupying"; or
   b. As a pedestrian when struck by;
   a motor vehicle designed for use mainly on public roads or a trailer of any type.
2. Any other person while "occupying" "your covered auto".

### EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.
2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (**2.**) does not apply to a share-the-expense car pool.
3. Sustained while "occupying" any vehicle located for use as a residence or premises.
4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".
5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.
6. Sustained while "occupying", or when



struck by, any vehicle (other than "your covered auto") which is:

a. Owned by any "family member"; or

b. Furnished or available for the regular use of any "family member".

However, this Exclusion **(6.)** does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so, This Exclusion **(7.)** does not apply to a "family member" using "your covered auto" which is owned by you.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion **(8.)** does not apply to "bodily injury" sustained while "occupying" a:

a. Private passenger auto;

b. Pickup or van that you own; or

c. "Trailer" used with a vehicle described in **a.** or **b.** above.

9. Caused by or as a consequence of:

a. Discharge of a nuclear weapon (even if accidental);

b. War (declared or undeclared);

c. Civil war;

d. Insurrection; or

e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a. Nuclear reaction;

b. Radiation; or

c. Radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** or Part **C** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

---

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.



3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:
    a. You or any "family member";
    b. A vehicle which you or any "family member" are "occupying"; or
    c. "Your covered auto".
4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
    a. Denies coverage; or
    b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Owned by any governmental unit or agency.
4. Operated on rails or crawler treads.
5. Designed mainly for use off public roads while not on public roads.
6. While located for use as a residence or premises.

## EXCLUSIONS

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

**B.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim without our consent.
2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion **(B.2.)** does not apply to a share-the-expense car pool.
3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(B.3.)** does not apply to a "family member" using "your

covered auto" which is owned by you.

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A.** or Part **B.** of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under



any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

**ARBITRATION**

A. If we and an "insured" do not agree:

   1. Whether that "insured" is legally entitled to recover damages; or

   2. As to the amount of damages which are recoverable by that "insured";

   from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

   1. Pay the expenses it incurs; and

   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will he binding as to:

   1. Whether the "insured" is legally entitled to recover damages; and

   2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must he made within 60 days of the arbitrator's decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

---

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

   1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

   If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

   1. Missiles or falling objects;

   2. Fire;

   3. Theft or larceny;

   4. Explosion or earthquake;

   5. Windstorm;

   6. Hail, water or flood;

   7. Malicious mischief or vandalism;

   8. Riot or civil commotion;

   9. Contact with bird or animal; or

   10. Breakage of glass.

   If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

C. "Non-owned auto" means:

   1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or



2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.

**TRANSPORTATION EXPENSES**

A. In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:
   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:
   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".
   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

   However, the most we will pay for any expenses for loss of use is $20 per day.

B. The loss is caused by:
1. A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:
   a. Beginning 48 hours after the theft; and
   b. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.
2. Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

C. Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

**EXCLUSIONS**

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:
   a. Wear and tear;
   b. Freezing;
   c. Mechanical or electrical breakdown or failure; or
   d. Road damage to tires.

   This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:
   a. Radioactive contamination;
   b. Discharge of any nuclear weapon (even if accidental);
   c. War (declared or undeclared);
   d. Civil war;
   e. Insurrection; or
   f. Rebellion or revolution.

4. Loss to any electronic equipment designed for the reproduction of sound and any accessories used with such equipment. This includes but is not limited to:
   a. Radios and stereos;
   b. Tape decks; or
   c. Compact disc players.

   This Exclusion (4.) does not apply to equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

   a. The equipment is permanently installed in "your covered auto" or any "non-owned auto"; or
   b. The equipment is:
      (1) Removable from a housing unit which is permanently installed in the auto;
      (2) Designed to be solely operated by use of the power from the auto's electrical system; and
      (3) In or upon "your covered auto" or any "non-owned auto" at the time of loss.

5. Loss to any electronic equipment that receives or transmits audio, visual or data signals and any accessories used with such equipment. This includes but is not limited to:



a. Citizens band radios;
b. Telephones;
c. Two-way mobile radios;
d. Scanning monitor receivers;
e. Television monitor receivers;
f. Video cassette recorders;
g. Audio cassette recorders; or
h. Personal computers.

This Exclusion **(5.)** does not apply to:

a. Any electronic equipment that is necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or
b. A permanently installed telephone designed to be operated by use of the power from the auto's electrical system and any accessories used with the telephone.

6. Loss to tapes, records, discs or other media used with equipment described in Exclusions **4.** and **5.**

7. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

This Exclusion **(7.)** does not apply to the interests of Loss Payees in "your covered auto".

8. Loss to:

a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or
b. Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:
   (1) Cooking, dining, plumbing or refrigeration facilities;
   (2) Awnings or cabanas; or
   (3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

This Exclusion **(8.)** does not apply to a:

a. "Trailer", and its facilities or equipment, which you do not own; or
b. "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:
   (1) Acquire during the policy period; and
   (2) Ask us to insure within 14 days after you become the owner.

9. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

10. Loss to equipment designed or used for the detection or location of radar or laser.

11. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

a. Special carpeting or insulation;
b. Furniture or bars;
c. Height-extending roofs; or
d. Custom murals, paintings or other decals or graphics.

This Exclusion **(11.)** does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

a. Selling;
b. Repairing;
c. Servicing;
d. Storing; or
e. Parking;

vehicles designed for use on public highways. This includes road testing and  delivery.

13. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

a. Competing in; or
b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

a. You; or
b. Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or
2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:



1. Any "non-owned auto" which is a trailer is $500.
2. Equipment designed solely for the reproduction of sound, including any accessories used with such equipment, which is installed in locations not used by the auto manufacturer for installation of such equipment or accessories, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or
2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";
2. Any other applicable physical damage insurance;
3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:
1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require:
   a. To physical exams by physicians we select. We will pay for these exams.
   b. To examination under oath and subscribe the same.
4. Authorize us to obtain:

a. Medical reports; and
b. Other pertinent records.
5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:
1. Promptly notify the police if a hit-and-run driver is involved.
2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:
1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.
2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.
3. Permit us to inspect and appraise the damaged property before its repair or disposal.



## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

  1. The number, type or use classification of insured vehicles;

  2. Operators using insured vehicles;

  3. The place of principal garaging of insured vehicles;

  4. Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph (**C.**) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

  1. A subsequent edition of your policy; or

  2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A**, no legal action may be brought against us until:

  1. We agree in writing that the "insured" has an obligation to pay; or

  2. The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

### OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

  1. Whatever is necessary to enable us to exercise our rights; and

  2. Nothing after loss to prejudice them.

  However, our rights in this Paragraph (**A.**) do not apply under Part **D**, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

  1. Hold in trust for us the proceeds of the recovery; and

  2. Reimburse us to the extent of our payment.

### POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

  1. During the policy period as shown in The Declarations; and

  2. Within the policy territory.

**B.** The policy territory is:
  1. The United States of America, its territories or possessions;
  2. Puerto Rico; or
  3. Canada.

  This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

### TERMINATION

**A. Cancellation**

  This policy may be cancelled during the policy period as follows:

  1. The named insured shown in the Declarations may cancel by:

    a. Returning this policy to us; or

    b. Giving us advance written notice of the date cancellation is to take effect.

  2. We may cancel by mailing to the named



insured shown in the Declarations at the address shown in this policy:

   **a.** At least 10 days notice:

     **(1)** If cancellation is for nonpayment of premium; or

     **(2)** If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   **b.** At least 20 days notice in all other cases.

**3.** After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   **a.** For nonpayment of premium; or

   **b.** If your driver's license or that of:

     **(1)** Any driver who lives with you; or

     **(2)** Any driver who customarily uses "your covered auto";

   has been suspended or revoked. This must have occurred:

     **(1)** During the policy period; or

     **(2)** Since the last anniversary of the original effective date if the policy period is other than 1 year; or

   **c.** If the policy was obtained through material misrepresentation.

**B. Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

**1.** Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

**2.** 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

**3.** 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**C. Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer. If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions**

**1.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**2.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**3.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

**1.** The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

**2.** The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.



**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the Insurer.

**SECRETARY**

**PRESIDENT**

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 1997



**AMENDMENT OF POLICY PROVISIONS - OHIO**

PERSONAL AUTO
AS 3716 07 16

## I. PART A - LIABILITY COVERAGE

Exclusion **A.1.** is replaced by the following:

1. For "bodily injury" or "property damage" which results directly or indirectly from:

   a. An intentional or criminal act or omission of any "insured" or an act or omission done at the direction of any "insured," even if the resulting "bodily injury" or "property damage";

      (1) is of a different kind, quality, or degree than initially expected or intended;

      (2) is sustained by a different person, entity, real or personal property, than initially expected or intended; or

      (3) any "insured" who lacks the mental capacity to govern his or her conduct.

   However, this exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

Exclusion **C.** is added as follows:

C. We do not provide Liability Coverage for punitive or exemplary damages including fines, penalties, or attorney's fees awarded, as a result of punitive or exemplary damages.

## II. PART F - GENERAL PROVISIONS

Part **F** is amended as follows:

A. The following is added to the Legal Action Against Us provision:

   **LEGAL ACTION AGAINST US**

   A. Any suit against us is limited to a two year limitation from date of loss. Insured is responsible to present suit and damage details to a Liberty Mutual representative within that time period to maintain rights to bring any legal action.

B. The following is added to the Our Right To Recover Payment provision:

   **OUR RIGHT TO RECOVER PAYMENT**

   Our rights do not apply under paragraph **A.** with respect to Uninsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Section **2.** of the definition of "uninsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage.

2. We also have a right to recover the advanced payment.

C. The Termination provision is replaced by the following:

   **TERMINATION**

   **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address last known by us:

   a. At least 10 days' notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 90 days this policy is in effect and this is not a renewal or continuation policy; or

   b. At least 30 days' notice in all other cases.

3. After this policy is in effect for 90 days, or if this is a renewal or continuation policy, we will cancel only:

Endorsements



a. For nonpayment of premium; or

b. If your driver's license has been suspended or revoked. This must have occurred:

   (1) During the policy period; or

   (2) Since the last anniversary of the original effective date if the policy period is other than one year.

   However, in the event that the driver's license of:

   (1) Any driver who lives with you; or

   (2) Any driver who customarily uses "your covered auto";

   has been suspended or revoked, we may issue an endorsement providing that coverage will not be afforded to that named person; or

c. For material misrepresentation or fraud by you with respect to any material fact in obtaining, changing, renewing this policy or with submitting any claim.

**Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address last known by us. Notice will be mailed at least 30 days before the end of the policy period. if the policy period is other than one year, or written without a fixed expiration date, we will have the right not to renew or continue it only at each anniversary of its original effective date.

**Automatic Termination.** If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.



**AUTOMOBILE AMENDATORY ENDORSEMENT**          AS 3763 07 16

## I. AGREEMENT

The following language is added to the end of the Agreement section:

The application for this policy is incorporated herein and made a part of this policy. When we refer to the policy, we mean this document, the application, the Declarations page, and any applicable endorsements. The Insured agrees that all of the statements in the application for this policy are his or her statements, and constitute warranties. The Insured agrees that this policy is issued in reliance upon the truth of the Insured's warranties in the application. If it is determined that any warranty made in the application is incorrect, this policy shall be void ab initio (void back to the date of inception) upon return of the policy premium.

## II. DEFINITIONS

The **Definitions** section is revised as follows:

A. The definition of "Newly Acquired Auto" replaced by the following:

"Newly acquired auto":

1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

   a. A private passenger auto; or

   b. A pickup or van, for which no other insurance policy provides coverage, that:

      (1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

      (2) Is not used for the delivery or transportation of goods and materials unless such use is:

         (a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

         (b) For farming or ranching.

   For this definition to apply to a "newly acquired auto", which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described

below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

   a. For any coverage provided in this policy except Coverage for Damage to Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

   However, for this coverage to apply to a "newly acquired auto" that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

   If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

   b. Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

      (1) 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

      (2) Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

   c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask



AS 3763 07 16

us to insure it within:

**(1)** 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

**(2)** Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto.

If you comply with the 5 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Other Than Collision deductible of $500 will apply.

The following definitions are added:

"Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

"Personal vehicle sharing program" means a legal entity qualified to do "business" in this state and engaged in the "business" of facilitating the sharing of private passenger motor vehicles for noncommercial use by individuals within this state. Private passenger motor vehicle as it relates to "personal vehicle sharing program" means a four wheel passenger or station wagon type motor vehicle insured under an automobile liability insurance policy covering any individuals residing in your household.

**III. PART A - LIABILITY COVERAGE**

The following replaces **B.** "Insured" as used in this Part means:

**B.** "Insured" as used in this Part means:

**1.** you or any "family member";

**2.** your spouse;

**3.** any other person who is not insured for vehicle liability coverage by any other insurance policy, a self-insurance program, or a liability bond while using "your covered auto". The use of "your covered auto" must be within the scope of

consent of you or your spouse; and

**4.** For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (**B.4.**) applies only if the person or organization does not own or hire the auto or "trailer".

However, for the purposes of this coverage, "insured" does not mean any person who is using "your covered auto" under a "personal vehicle sharing program."

**EXCLUSIONS**

Exclusion **A.5.** is replaced by the following:

**5.** For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (**A.5**) does not apply to a share-the-expense car pool.

Exclusion **B.4.** is replaced by the following:

**4.** Any vehicle while it is:

**a.** Operating on a surface designed or used for racing, except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

**b.** Participating in a high performance driving or racing instruction course or school; or

**c.** Preparing for, practicing for, used in, or competing in any prearranged or organized:

**(1)** race activity; or

**(2)** speed, performance, stunt, or demolition contest or exhibition.

The Other Insurance provision is replaced by the following:

**OTHER INSURANCE**

If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies



AS 3763 07 16

on an excess basis, we will bear our proportionate share with other collectible liability insurance.

III. **PART B - MEDICAL PAYMENT COVERAGE INSURING AGREEMENT**

Item **A.** of the Insuring Agreement is replaced by the following:

A. We will pay "usual and customary charges" incurred for necessary medical and funeral services because of "bodily injury":

   1. Caused by accident; and
   2. Sustained by an "insured."

   We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. Item **B.2.** of the Insuring Agreement is replaced by the following:

   2. Any other person while occupying your covered auto with your express or implied permission. The actual occupation must be within the scope of that permission.

   3. Any other person while occupying, as a guest, an automobile not owned by you or a family member, while being operated by you or a family member.

C. The following is added to Item **B.** of the Insuring Agreement:

   However, for the purposes of this coverage, "insured" does not mean any person who is occupying or using "your covered auto" under a "personal vehicle sharing program."

   The following definitions are added:

   "Reasonable expenses" - when applied to medical services incurred by an "insured" means the least of:

   1. The actual charge;
   2. The charge negotiated with a provider; or
   3. The charge determined by us based on a methodology using a database designed to reflect amounts charged by providers of medical services or supplies within the same or similar geographic region in which you receive your medical services or supplies. The database will reflect (a) service charge data regardless of the provider's specialty and (b) in the case of new procedures, services or supplies, or existing procedures, services or supplies for which

there is little or no charge data, a comparison to commonly used procedures, services or supplies.

"Usual and customary charges" as used in this Part means:

   The lowest of the following:

   1. The charge billed by the medical provider for covered treatment;
   2. The eightieth percentile charge for that covered treatment in the geozip area where the provider is located, as determined through the use of a FAIRHealth or similar database;
   3. The amount authorized by a state mandated fee schedule or by another law or regulation; or
   4. The amount authorized by a written PPN or PPO agreement to which the Medical Provider is a party.

   The "insured" shall not be responsible for payment of any reduction applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such disputes.

**EXCLUSIONS**

Exclusion **2.** is replaced by the following:

   2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (2.) does not apply to a share-the-expense car pool.

Exclusion **11.** under the Exclusions section of **Part B** is replaced by the following:

   11. Sustained while "occupying" any vehicle while it is:

   a. operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

   b. participating in a high performance driving or racing instruction course or school; or



AS 3763 07 16

c. preparing for, practicing for, used in, or competing in any prearranged or organized:
   (1) race activity; or
   (2) speed, performance, stunt, or demolition contest or exhibition.

The following Exclusion is added:

12. Arising out of a criminal act or omission of an "insured." This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime. However, this exclusion (12.) does not apply to traffic violations.

The Other Insurance section is replaced by the following:

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance available any insurance we provide shall be excess over any other applicable auto medical payments insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible auto medical payments insurance.

**V.  PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

Paragraph **A.** of the **Insuring Agreement** of **Part D** is replaced by the following:

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, subject to **Customized Equipment Coverage**, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same collision, only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.
   If there is a loss to a "non-owned auto" we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

The following **Customized Equipment Coverage** provision is added under **Part D:**

**CUSTOMIZED EQUIPMENT COVERAGE**

A. We will pay up to $500 for theft or damage to "customized equipment" if the loss is caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a "non-owned auto" keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for "your covered auto" or any "non-owned auto".

B. "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

1. are permanently installed or attached by bolts or brackets;
2. are removable from a housing unit that is permanently installed inside the auto;
3. are permanently bonded to the vehicle by an adhesive or welding procedure; or
4. change the appearance or performance of the vehicle;
   including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or equipment.

This also includes any electronic equipment that is not necessary for the normal operation of the auto or



AS 3763 07 16

the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered "customized equipment".

C. The limit for equipment designed solely for the reproduction of sound, including any accessories used with such equipment, which is not installed in the dash or console openings specified by the auto manufacturer of such equipment or accessories is $1,000.

D. If you have purchased additional coverage for "customized equipment" we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

E. The most we will pay for parts, equipment and accessories that are:
   1. not installed by the auto manufacturer or dealer and
   2. permanently installed in or upon the auto is the actual cash value of the vehicle not including such parts, equipment and accessories.

The **Transportation Expenses** provision of **Part D** is replaced by the following:

TRANSPORTATION EXPENSES

In addition, we will pay up to $30 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies only in the event of the theft of "your covered auto".

We will pay only transportation expenses incurred during the period:
   1. Beginning 48 hours after the theft; and
   2. Ending when "your covered auto" is returned to use or we pay for its loss.

EXCLUSIONS

Exclusion **1.** is replaced by the following:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (**1.**) does not apply to a share-the-expense car pool.

Exclusion **4.** is replaced by the following:

4. We will not pay for loss to equipment that is not permanently installed in or upon "your covered auto" or any "non-owned auto". This consists of any equipment that is either designed for the reproduction of sound or receives or transmits audio, visual or data signals.

This includes but is not limited to:
   a. radios and stereos;
   b. tape decks;
   c. compact disc players and burners;
   d. digital video disc (DVD) players and burners;
   e. citizens band radios;
   f. scanning monitor receivers;
   g. television monitor receivers;
   h. global positioning system (GPS) receivers and/or components;
   i. video cassette players and recorders;
   j. audio cassette recorders; or
   k. personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

Exclusion **5.** is replaced by the following:

5. We will not pay for loss to "customized equipment" in excess of what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

Exclusion **13.** is replaced by the following:

13. Loss to "your covered auto" or any "non-owned auto" while it is:
   a. operating on a surface designed or used for racing except for an



AS 3763 07 16

organized and controlled event that is not a speed, performance, stunt or demolition event;

b. participating in a high performance driving or racing instruction course or school; or

c. preparing for, practicing for, used in, or competing in any prearranged or organized:
   (1) race activity; or
   (2) speed, performance, stunt, or demolition contest or exhibition.

The following Exclusions are added:

15. Loss to "your covered auto" or any "non-owned auto" which arises out of a criminal act or omission of an "insured." This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime. However, this exclusion (**15.**) does not apply to traffic violations.

16. Loss to "your covered auto" or "non-owned auto" while being used in a "personal vehicle sharing program."

The **Limit of Liability** provision is replaced by the following:

LIMIT OF LIABILITY

A. At our option, our limit of liability for loss will be the lowest of:

1. The actual cash value of the stolen or damaged property;

2. a. The amount necessary to repair or replace the property;
   b. Determination of the cost of repair or replacement will be based upon one of the following:
      (1) the cost of repair or replacement agreed upon by you and us;
      (2) a competitive bid approved by us; or
      (3) an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive

price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

3. The limit of liability shown in the Declarations.

However, the most we will pay for loss to:

1. Any "non-owned auto" which is a trailer is $500.

2. Equipment designed solely for the reproduction of sound, including any accessories used with such equipment, which is installed in locations not used by the auto manufacturer for installation of such equipment or accessories, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any "customized equipment".

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

VI. PART E - DUTIES AFTER AN ACCIDENT OR LOSS

**Part E** is amended as follows:

A. Paragraph **B.** of **Part E** is replaced by the following:

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require within 30 days of our request:
   a. To physical and mental exams by physicians we select under terms we require. We will pay for these exams.
   b. To interviews and recorded statements without the need for us to conduct an examination under oath.

Includes copyrighted material of ISO with its permission.



AS 3763 07 16

   c. To examination under oath and subscribe the same.
4. Authorize us to obtain, within 30 days of our request:
   a. Medical reports; and
   b. Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.
5. Submit a proof of loss and proof of expenses when required by us within 30 days of our request.

**VII. PART F - GENERAL PROVISIONS**

Part **F** is amended as follows:

**CHANGES**

Items **A.** and **B.** of the Changes provision are replaced by the following:

A. This policy, your application, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. The premium for your policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we will adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that may result in a premium increase or decrease during the policy term include, but are not limited to, changes in:
   1. The number, type or use classification of insured vehicles;
   2. Operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses.
   3. The location where your vehicle is principally garaged.
   4. Customized equipment or parts.
   5. The persons who regularly operate a covered auto.

   You also agree to disclose all licensed drivers residing in your household.

   The following provision is added:

**DUTY TO REPORT CHANGES**

You must promptly report to us all changes, including additions and deletions, in policy information. Further, you must report to us certain changes no later than 30 days after the change occurs. These are changes to:
1. your residence address;
2. operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses;
3. the location where your vehicle is principally garaged;
   the persons who regularly operate a covered auto;
4. the driver's license or operator's permit status of you, a relative, or a resident of your household.

The **Fraud** provision is replaced by the following:

**FRAUD**

This policy was issued in reliance upon the information provided on your application. Any changes we make at your request to this policy after inception will be made in reliance upon information you provide. We may void this policy if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made, at the time changes were requested, or any time during the policy period.

We may void this policy or deny coverage for an accident or loss if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage for fraud or material misrepresentation even after the occurrence of an accident or loss. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so requested, you must reimburse us for any payments we may have already made.

The following provisions are added:

**STORAGE COSTS**

If you give us your consent, we may



AS 3763 07 16

move the damaged property, at our expense, to reduce storage costs during the claims process. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

**PAYMENT OF PREMIUM**

If your initial premium payment is by check, draft or any remittance other than cash, coverage under this policy is conditioned upon the check, draft or remittance being honored upon presentment to the bank or other financial institution. If the check, draft or remittance is not honored upon presentment, this policy may, at our option, be deemed void from its inception. This means that we will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft or remittance had been honored upon presentment.

The following **Loyalty Rewards** provision is added under **Part F:**

**LOYALTY REWARDS**

At our sole discretion, we, or a partner organization, may reward you by providing you, or another person insured under this policy, with things of value, including: airline miles, memberships, merchandise, points, rewards, services, or other items.



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**UNINSURED/UNDERINSURED MOTORISTS COVERAGE - OHIO**

PERSONAL AUTO
AS 3645 07 16

**Part C - Uninsured Motorists Coverage** is replaced by the following:

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of:

1. An "uninsured motor vehicle" as defined in Sections **1.**, **2.**, and **4.** of the definition of an "uninsured motor vehicle" because of "bodily injury":

   a. Sustained by an "insured"; and

   b. Caused by an accident.

2. An "uninsured motor vehicle" as defined in Section **3.** of the definition of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured".

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

With respect to Section **2.** of the definition of "uninsured motor vehicle" or "underinsured motor vehicle" we will pay under this coverage only if **1.** or **2.** below applies:

1. The limits of liability under any bodily injury liability bonds or policies applicable to the "uninsured motor vehicle" or "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Section **2.** of the definition of "uninsured motor vehicle" and we:

   a. Have been given prompt written notice of such settlement; and

   b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

   Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. you or any "family member";

2. your spouse;

3. any other person who is not insured for vehicle liability coverage by any other insurance policy, a self-insurance program, or a liability bond while using such a car. The use of such car must be within the scope of consent of you or your spouse; and

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (**B.4.**) applies only if the person or organization does not own or hire the auto or "trailer".

However, for the purposes of this coverage, "insured" does not mean any person who is occupying or using "your covered auto" under a "personal vehicle sharing program."

C. "Uninsured motor vehicle" means a self-propelled land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily liability must be less than the limit of liability for this coverage.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes "bodily injury" without hitting:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

   The facts of the accident or intentional act must be proved. We will only accept independent corroborative evidence other than the testimony of an "insured" making a claim under this coverage, unless such testimony is supported by additional evidence.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.



"Underinsured motor vehicle" means a self-propelled land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit for bodily injury liability is either:

    a. Less than the limit of liability for this coverage; or

    b. Reduced by payments to others injured in the accident to an amount which is less than the limit of liability for this coverage.

However, "uninsured motor vehicle" or "underinsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency, unless the owner or operator of the "uninsured motor vehicle" has:

    a. An immunity under the Ohio Political Subdivision Tort Liability Law; or

    b. A diplomatic immunity.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage or Underinsured Motor Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying" or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage or Underinsured Motorist Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim without our consent.

However, this Exclusion (B.1.) does not apply if such settlement does not prejudice our right to recover payment.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (B.2) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

4. While using any vehicle while it is:

    a. operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

    b. participating in a high performance driving or racing instruction course or school; or

    c. preparing for, practicing for, used in, or competing in any prearranged or organized:

        (1) race activity; or

        (2) speed, performance, stunt, or demolition contest or exhibition.

5. Arising out of a criminal act or omission of an "insured." This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime. However, this exclusion (5.) does not apply to traffic violations.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Worker's Compensation law, or

2. Disability benefits law, except worker's compensation benefits.

D. We do not provide Uninsured Motorists Coverage or Underinsured Motorist Coverage for punitive or exemplary damages including fines, penalties, or attorney's fees awarded, as a result of punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the



Declarations for each person for Uninsured Motorists Coverage or Underinsured Motorist Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage or Underinsured Motorist Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. The limit of liability shall be reduced by all sums paid because of "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part **A** of this policy.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and

1. Part **A**, Part **B** or Part **C** of this policy; or
2. Both Uninsured Motorist Coverage and Underinsured Motorist Coverage provided by this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto," shall be excess over any collectible insurance.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or
2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and
2. The amount of damages.

## ADDITIONAL DUTY AFTER AN ACCIDENT OR LOSS

A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a



tentative settlement between the "insured" and the insurer of a vehicle described in Section **2.** of the definition of "uninsured motor vehicle", and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle".

**GENERAL PROVISIONS**

**A.** The following is added to the **Our Right to Recover Payment** Provision in Part **F:**

**OUR RIGHT TO RECOVER PAYMENT**

Our rights do not apply under Paragraph **A.** with respect to Underinsured Motorist Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle", and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2. We also have a right to recover the advanced payment

**B.** The following is added to the **Legal Action Against Us** Provision in Part **F:**

**LEGAL ACTION AGAINST US**

**C.** Any suit against us for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage is limited to a three year limitation from date of loss, or one year after the liability insurer for the owner or operator of the motor vehicle liable to the insured becomes the subject of insolvency proceedings, whichever is later.



# AMENDMENT OF POLICY DEFINITIONS

**THIS ENDORSEMENT CHANGES YOUR POLICY. IT REPLACES ALL OTHER REFERENCES TO THE SAME SECTIONS OF THE POLICY.**

The following is added to item **A.** under the policy **DEFINITIONS:**

3. the partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

The above, only applies if the civil union or partnership was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

1. The end of 90 days following the change of residency;

2. The effective date of another policy listing the spouse or partner defined above as a named insured; or

3. The end of the policy period.

Paragraph **A.** of the **TRANSFER OF YOUR INTEREST IN THIS POLICY** is deleted. It is replaced with the following:

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

1. the surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death. Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the declarations; and

2. the legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with regard to the representative's legal responsibility to maintain or use "your covered auto".

Section 1. only applies if the union or partnership is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

All other terms and conditions of this policy remain the same.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

PERSONAL AUTO
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 13 01 12 99 Copyright, Insurance Services Office, Inc., 1999 Page 1 of 1

## TOWING AND LABOR COVERAGE

AS 2208 03 16

We will pay for emergency roadside assistance charges incurred each time "your covered auto" or any "non-owned auto" is disabled due to mechanical or electrical breakdown .  This includes:

1. necessary towing charges when you call Liberty Mutual Roadside Assistance and allow us to  make arrangements for the tow to the nearest repair facility from the place of disablement;
2. towing charges up to the amount shown on the policy Declarations Page when you either
   a) arrange for the tow; or
   b) request a tow to a repair facility other than the nearest repair facility from the place of disablement; or
3. when a tow is not required, labor charges incurred at the place of disablement, not to exceed the amount shown on the policy Declarations Page.

Coverage is limited to no more than four occurrences per vehicle plus additional four occurrences per policy in a 12 month policy period for coverages  **1.**, **2.**, and **3.** above.

The nearest repair facility is determined by Liberty Mutual.

This coverage must be shown in the Declarations for the specific disabled vehicle which has this coverage.

If a "non-owned auto" is disabled, we will provide the coverage listed above only if you have purchased Towing and Labor Coverage for at least one "your covered auto" and it is shown in the  Declarations.

This endorsement must be attached to the Change Endorsement when issued after the policy is  written.

AS 2208 03 16 Liberty Mutual Insurance Group Page 1 of 1



NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD EXCLUSION ENDORSEMENT                    AS 2213 02 05

## THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY INCLUDING ANY AND ALL ENDORSEMENTS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

We **do not** provide coverage for loss, damage, injury, liability, cost or expense due to or as  a consequence of, whether controlled or uncontrolled or however caused:

    a. Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or contamination; and/or

    b. Biological or chemical attack or exposure to biological or chemical agents, or combination of  such agents, including resulting contamination or pollution.

We **do not** provide coverage for loss, damage, injury, liability, cost or expense arising out of  or aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus  or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents  or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

AS 2213 02 05                          ©2003 Liberty Mutual Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LIABILITY COVERAGE EXCLUSION ENDORSEMENT
PERSONAL AUTO
PP 03 26 04 13

**LIABILITY COVERAGE**

The following exclusion is added to Part  **A**, Section **A**:

We do not provide Liability Coverage for any "insured" for "bodily injury" to you or any "family  member".

This exclusion does not apply in the case of death to you or any "family member".

This endorsement must be attached to the Change Endorsement when issued after the policy is  written.



## Notice of Privacy Policy

Liberty Mutual* values you as a customer and takes your personal privacy seriously. When you request a rate quotation, apply for insurance, request changes to your insurance policy or submit a claim, you disclose information about yourself or members of your family. This notice tells you how we treat the information we collect about you.

1. **INFORMATION WE MAY COLLECT**

We collect information about you from:

- Applications or other forms you complete, and information you provide to us over the telephone;
- Your business dealings with us and other companies;
- Your employer or association for Liberty Mutual Group products;
- Consumer reporting agencies, Motor Vehicle Departments, inspection services and medical providers; and
- Visits to our Liberty Mutual website.

2. **TYPES OF INFORMATION WE MAY DISCLOSE**

We may disclose the following about you:

- Information from your application or other forms, such as your name, date of birth, address, social security number, vehicle and driver information;
- Information about your transactions with us, our affiliates or others, such as your insurance coverages, payment history, and certain claims information; and
- Information we receive from third parties, such as your motor vehicle records and claims history.

3. **TO WHOM INFORMATION MAY BE DISCLOSED**

We do not disclose personal information about you to anyone unless allowed by law. We are allowed by law to provide information to:

- A third party that performs services for us, such as claims investigations, medical examinations, inspections, and appraisals or for roadside assistance or the repair of your vehicle if you have a claim;
- Our affiliated companies and reinsurers;
- Insurance regulators and reporting agencies;
- Consumer reporting agencies to obtain loss history information, motor vehicle reports, or credit report information where permitted by law;
- State Motor Vehicle Departments to obtain a report of any accidents or convictions or to confirm your compliance with compulsory motor vehicle liability insurance laws;
- Law enforcement agencies or other government authorities to report suspected illegal activities;
- A person or organization conducting insurance actuarial, or research studies;
- Companies that provide marketing services on our behalf, or as part of a joint marketing agreement with banks, credit unions, and affinity partners, or providers of annuity and financial products and services offered through us to our customers; and
- As otherwise permitted by law.

4. **HOW WE PROTECT INFORMATION**

We maintain physical, electronic, and procedural safeguards to protect your nonpublic personal information. These safeguards comply with applicable laws. We retain your information for as long as required by law or regulation. The only employees or agents who have access to your information are those who must have it to provide products or services to you. We do not sell your information to mass marketing or telemarketing companies. Any information we share with third parties, such as those organizations which perform a service for us or market our products, is subject to appropriate confidentiality protections and may be used only for the purposes intended.

*This privacy notice is provided on behalf of the following Liberty Mutual companies and affiliates that provide personal automobile, homeowners, life insurance and annuities: Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty Insurance Company of America, Liberty Northwest Insurance Corporation, Liberty Life Assurance Company of Boston, Liberty County Mutual Insurance Company (Texas only), Liberty Lloyds of Texas Insurance Company, LM Property and Casualty Insurance Company, Liberty Mutual Personal Insurance Company, Liberty Personal Insurance Company, Liberty Mutual Mid-Atlantic Insurance Company, LM General Insurance Company, American States Preferred Insurance Company, Consolidated Insurance Company, Wausau General Insurance Company, Wausau Underwriters Insurance Company, Wausau Business Insurance Company and Montgomery Mutual Insurance Company.

Notices



## Important Information

January 09, 2019

Thank you for choosing Liberty Mutual as your motor vehicle insurance provider.  We take pride  in offering you excellent products with personal service at a competitive price.  To offer the  most competitive price, we consider many factors when determining your premium.  This includes  an evaluation of a combination of information, such as your driving history, loss history, and  prior coverages.  Some of the information we considered was obtained from a consumer report; and the  rate charged is higher than it would have been had we not considered this information.

TransUnion Consumer Solutions, P.O. Box 2000, Chester, PA 19022-2000; 800-645-1938 provided the credit based insurance score we used.

The following reasons related to your credit information were considered in our underwriting process: Number of adverse public record(s) or adverse account(s), excluding bankruptcies.;Number of accounts ever past due;Account(s) sent to collections;Account(s) sent to collections with amounts due

While the above consumer reporting agency(ies) provided the information, they did not make the decision as to what rate we offer you, nor can they provide you with a reason why a particular underwriting decision was made.

You are entitled to receive a copy of the consumer report(s) we reviewed, and if your request is made to the consumer reporting agency(ies) within sixty (60) days of this notice, the report will be provided by them free of charge.  This will help you better understand what was reviewed and to dispute any errors that may appear on the report.  You will need to provide identification, such as a copy of your driver's license, passport, or birth certificate when you request your report(s).

If you believe the report includes inaccurate information, you may request the consumer reporting agency to reinvestigate and issue an updated report within thirty (30) days without charge.  If the consumer reporting agency makes any corrections to your report, please ask them to send a copy to Liberty Mutual so we can review your updated information.

If you have any questions, please contact us at  1-800-225-8285 and a representative will be happy to assist you.



**Extraordinary Life Event Credit Exception Request**

The preceding notice advises you that your credit information contributed to the decision we made.  If you believe any of the extraordinary circumstances listed below has unfavorably affected your credit history, you may request an exception to our use of this information.

- Catastrophic medical expense due to illness, injury, disease or disability;
- Divorce or dissolution of a marriage;
- Death of a spouse or family member;
- Involuntary loss of employment;
- Identity theft;
- Total or other loss that makes your home uninhabitable;
- Victim of domestic abuse;
- Care of an adult dependent or dependent grandchild;
- Impact from a major natural catastrophe, including hurricanes or tornadoes;
- Military deployment overseas

You may send your request by e-mail to <u>CreditExceptionRequest@LibertyMutual.com</u> or by writing to:

Credit Exception Request
Liberty Mutual Group
175 Berkeley Street
Mail Stop JO4H
Boston, MA 02116

Please provide us with your name, address, telephone number and policy number.  Upon receipt of your request, we will send you an Extraordinary Circumstance Credit Exception form. You will be asked to complete the form and return it with the necessary documentation to support your request.  Upon receipt of your form and documentation, Liberty Mutual will review your information and determine whether you may be entitled to a lower premium.  Please contact us within 90 days of this notice, if you want us to consider a request for an exception.



## Choose The Payment Option That Works For You

We are committed to making billing easy and hassle free. That is why we offer a selection of billing and payment options to choose from.

### PAYMENT OPTIONS

- **Electronic Funds Transfer (EFT).** Save time and money with our convenient EFT option. Once you enroll, your insurance payment will be withdrawn directly from your checking/savings account. A charge may be applied to each installment unless paid in full, although installment fees will be lower than for other payments options. As a convenience, we will make every attempt to issue any refunds due to your bank account from which the payment was received. Sign up by visiting LibertyMutual.com/register or if you already have an eService account, simply login.

- **Recurring Credit Card\*.** Save time with our recurring credit card option. Once you enroll, your insurance payment will be charged directly to your credit card. As a convenience, we will make every attempt to issue any refunds due to your credit card from which the payment was received. We accept all major credit cards including American Express, Visa, MasterCard and Discover. A charge will be applied to each installment unless paid in full. Sign up by visiting LibertyMutual.com/register or if you already have an eService account, simply login .

- **Online.** Pay your bill online with eService at LibertyMutual.com/register. Click to register, or if you already have an eService account, simply login. A charge may be applied to each installment unless paid in full.

- **Direct Bill.** Choose a billing frequency (i.e. Monthly, Quarterly, Pay in Full , Pay in Two and Bi-Monthly) that is right for you and receive paper bills by mail. A charge will be applied to each installment unless paid in full.

**\*This option is available for most policy types.**

### REFUNDS

In most states and in most situations, any refunds owed will automatically be refunded in the same method your last payment was received. For example, if the last payment you made was with a credit card, we will apply your refund back to your credit card. We will refund electronic check payments back to your checking account instead of mailing you a check. Electronic check payments include:

- Check payments processed online at LibertyMutual.com
- A Liberty Mutual Service Rep initiated one-time check or EFT payment

However, we will typically mail a refund check in the following situations:

- The refund amount is greater than the last single payment amount received
- Your bank rejects an electronic refund
- Your credit card company rejects an electronic refund

### FEES

- An installment charge may be applied to the outstanding account balance if there is a current installment amount due depending on the payment option chosen. You can avoid future installment charges by paying the Account Balance in full or you may save on future installment charges by enrolling in Electronic Funds Transfer (EFT) payment option.

- If we receive your payment after the due date, you may be charged a late fee of up to $15.00. Late payments may affect your future premiums, your coverage or continuation of your policy.

- **A returned payment fee** may be charged for any payment not accepted by your financial institution.

If you have any questions please contact us at 1-800-225-8285 and a representative will be happy to assist you.

Thank you for insuring with Liberty Mutual. We appreciate your business.



**Disclosure to Liberty Mutual Policyholders Regarding Medical Payments**

In most states, including those listed below, Liberty Mutual will pay or reimburse a Medical Provider's charge for medical treatment, medical service, medication or prosthesis covered by the Medical Payments or Personal Injury Protection coverage provided by your auto policy by paying (subject to applicable policy limits) the lowest of (a) the billed charge, (b) the 80th percentile charge indicated by the FAIRHealth medical-charge database for similar services in the same geographic area, (c) the amount authorized by a state mandated fee schedule or by another applicable law or regulation, or (d) the amount authorized by a written preferred-provider network or organization agreement to which the Medical Provider is a party.  Liberty Mutual pays claims in this manner to comply with state regulations and policy language and to conserve insureds' limited PIP and MedPay benefits.

This disclosure applies to personal auto policies issued in Alabama, Alaska, Arizona,  Arkansas, California, Colorado, Connecticut, District of Columbia, Georgia, Idaho, Illinois, Indiana, Iowa,  Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,  Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio, South  Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, Wisconsin and Wyoming.

"Liberty Mutual" means the insurance company issuing your auto policy and includes Liberty  Mutual Insurance Company, Liberty Mutual Fire Insurance Company, The First Liberty Insurance  Corporation, Liberty Personal Insurance Company, Liberty Insurance Corporation, Liberty Lloyds of Texas  Insurance Company, LM General Insurance Company,  and LM Personal Insurance Company.

"Medical Provider" means any hospital, clinic, pharmacy, physician, physician's assistant,  chiropractor, nurse, nurse practitioner, emergency medical technician, and/or any other person or entity who  claims or claimed a right to payment for providing medical treatment, medical services, medication,  or prosthesis for an injury covered by the Medical Payments or Personal Injury Protection  coverage provided by your auto policy.

US 3182560v.1
PMKT 1170 02 15